KIRSCHBAUM, RESPONDENT, *v.* MAYN, APPELLANT.

(No. 5,878.)

(Submitted May 12, 1926.   Decided May 20, 1926.)

[246 Pac. 953.]

*Claim and Delivery—Clerk of District Court—Acceptance of Liberty Bonds as Bail—Estoppel—Parties in Pari Delicto—Erroneous Judgment—Clerk of District Court.*

Claim and Delivery—Deposit of Liberty Bonds as Bail—Equivalent of Cash—Stipulation—Estoppel,
1.  Where plaintiff in an action in claim and delivery against a clerk of the district court to recover possession of Liberty bonds deposited as bail for one accused of crime and subsequently declared forfeited, brought on the theory that the deposit was unauthorized under section 12154, Revised Codes of 1921, under which the clerk could accept only money, had stipulated at the time bail was furnished that the bonds were substantially the equivalent of the amount fixed as bail in money or cash, she was estopped to assert otherwise.

Same—Acceptance of Liberty Bonds as Bail—Estoppel—Parties *in Pari Delicto.*
2.  If the district court did not have authority to accept Liberty bonds in lieu of money as bail, plaintiff upon whose solicitations the court accepted them, having been *in pari delicto,* was estopped to assert lack of authority in the court to receive them as bail, since she could not take advantage of her own wrong.

Same—Release on Bail—Nondelivery of Certificate to Sheriff—Immaterial Irregularity.
3.  Where a prisoner for whom bail was furnished by plaintiff by a deposit of Liberty bonds was in court in the custody of the sheriff and released at once, the fact that a certificate of the deposit was not delivered to the officer as required by section 12154, Revised Codes, as authority for releasing him, was immaterial.

[76 Mont. 320.]

Same—Acceptance of Liberty Bonds as Bail—Judgment Against Clerk in Individual Capacity—When Erroneous.

4. Where the clerk of the district court received Liberty bonds as bail in his official capacity by direction of the court, a judgment against him individually in an action of claim and delivery on the theory that the action of the court was unlawful, that therefore the clerk received the bonds in his individual capacity and was answerable to the owner, *held* erroneous under the facts of the case.

---

[1, 2]   Admission, 1 C. J., p. 1363, n. 3.  Bail, 6 C. J., sec. 1, p. 891, n. 10; sec. 277, p. 1023, n. 45; p. 1025, n. 64 New; sec. 278, p. 1025, n. 64 New.  Contracts, 13 C. J., sec. 440, p. 493, n. 18.

[3]   Bail, 6 C. J., sec. 278, p. 1024, n. 54; p. 1025, n. 64 New; Trial, 38 Cyc., p. 1934, n. 50.

[4]   Deposits in Court, 18 C. J., sec. 34, p. 773, n. 10.

*Appeal from District Court, Meagher County in the Fourteenth Judicial District; Jeremiah J. Lynch, a Judge of the Second District, presiding.*

ACTION by Aurelia Kirschbaum against F. H. Mayn, individually and as Clerk of the District Court of the Fourteenth Judicial District in and for Meagher County. Judgment for plaintiff, and defendant appeals. Reversed.

*Mr. C. L. Linn* and *Mr. William T. Pigott,* for Appellant, submitted a brief; *Mr. Pigott* argued the cause orally.

The district court and Judge Ford had jurisdiction to admit Craig to bail. The jurisdiction, the power, was general in character. Any error or mistake or inadvertence (if such there were) committed in accepting the deposit, was one within jurisdiction. If the court or Judge Ford erred in deciding that the bonds were the equivalent of money, and in accepting them in place of bail, plaintiff may not complain thereof. Moreover the attack here is collateral, as will be mentioned hereafter.

In the next place, plaintiff has no interest in or title to the bonds so far as the state or appellant is concerned. She has had no title or interest since she parted with them to Craig in September, 1923. The rule is general, and always under statutes like Revised Codes, sections 12154–12160, that money deposited in lieu of bail is, in contemplation of law the property

of the defendant, no matter who advanced it or who is the owner as between defendant and another person; and that the money must be returned to the defendant upon his surrender. (*Mundell* v. *Wells,* 181 Cal. 398, 7 A. L. R. 383, 184 Pac. 666; *People* v. *Laidlaw,* 102 N. Y. 588, 7 N. E. 910; *Whiteaker* v. *State,* 31 Okl. 65, 119 Pac. 1003; 5 Cyc. 27, 28.) As between the state and plaintiff the presumption is indisputable that Craig owned the bonds which he deposited in the place of bail by undertaking. The state did not know the plaintiff in the transaction; the bonds were deposited by Craig, the prisoner, to secure his liberty; whether as between plaintiff and Craig, the title is in the one or the other, or is in a third person, concerns not at all either the state or defendant. By delivering the bonds to Craig for him to deposit, she divested herself, as far as the state was concerned, of every shred of title, and was estopped to assert ownership in herself. Instantly the bonds became Craig's property for the purposes and objects of the deposit. Even if this court should declare the bonds to be not the substantial equivalent of $2,000 (despite the stipulation that they are), it is obvious that plaintiff voluntarily gave them to Craig for deposit in lieu of bail and that the deposit was made. Likewise it is obvious that Craig himself, were he, the plaintiff asserting ownership in himself, could not maintain this action; of this there will be more said later. How, then is it possible that plaintiff, who parted with title on September 7, 1923, can be permitted to prevail?

This action is a collateral attack upon two orders of the lower court and one final judgment thereof, all made within jurisdiction (and, it may be remarked again, by a person who is without title to the subject of the action). Herein plaintiff indirectly assails as null and void the order and direction of the court and judge for the deposit of the bonds and release of Craig from custody; she indirectly assails the order forfeiting the bonds to the extent of $2,000, which was duly given upon Craig's default of appearance at trial; and she indirectly assails the judgment against Craig and the bonds for $2,000,

to be collected by writ of execution against the bonds. We submit that she should not be allowed to do this. Craig could not; and for even better and more cogent reasons (if such may be) she cannot. Plaintiff was in no aspect a surety for Craig; no proceeding whatever was necessary or even proper to complete the forfeiture; the judgment against Craig who deposited the funds (bonds) concludes all matters which might have been urged prior to the adjudication as to the parties and persons interested, including any person who, as between herself and Craig, owned the fund; and neither the order of forfeiture nor the judgment may be collaterally attacked or questioned. (*Mundell* v. *Wells,* 181 Cal. 398, 7 A. L. R. 383, 184 Pac. 666; *Duree* v. *State,* 107 Okl. 251, 231 Pac. 292; *State* v. *Evans,* 13 Mont. 239, 245, 33 Pac. 1010; *Friedline* v. *State,* 93 Ind. 366; *Arnsparger* v. *Norman,* 101 Ky. 208, 40 S. W. 574; *Whiteaker* v. *State,* 31 Okl. 65, 119 Pac. 1003; 3 R. C. L., p. 29, sec. 33; p. 32, sec. 38; *State* v. *Superior Court,* 135 Wash. 640, 238 Pac. 639.)

Further proof that the person furnishing money, or the equivalent, in place of bail, is not a surety and has no right of a surety under such statutes as sections 12154 and 12156, appears from the fact that such person is never entitled to surrender the accused in exoneration of the deposit. (*Mundell* v. *Wells, supra.*)

Even if the district court and Judge Ford were without authortty to take the Liberty bonds in lieu of bail, plaintiff will not be here to complain for three reasons: 1. She has no interest as already shown. 2. She is estopped. 3. She waived the requirement of a deposit of actual money. There is not a dearth of cases announcing these principles, which appeal with peculiar force in the present case. (See *Sauskelonis* v. *Herting (City of New Britain),* 89 Conn. 298, 94 Atl. 366; *Cooper* v. *Rivers,* 95 Miss. 423, 48 South. 1024; *Jones* v. *Gordon,* 82 Ga. 570, 9 S. E. 782; *Moss* v. *Summit County,* 60 Utah, 252, 26 A. L. R. 206, 208 Pac. 507; *Bryant* v. *City of Bisbee* (Ariz.), 237 Pac. 380.)

*Mr. Earle F. Angell* and *Mr. Edward Horsky*, for Respondent, submitted a brief; Mr. Horsky argued the cause orally.

The statutory authority to the clerk, Mayn, was to either accept a written undertaking or a money deposit in equal amount in lieu thereof. The court had neither the power, authority or jurisdiction to grant Craig's request to put up Liberty bonds as cash, nor to authorize or direct the clerk so to do, even if granting Craig's request can be construed as authority or directions to the clerk. What is money in the legal sense of the word? Quoting from 27 Cyc., p. 812, under the heading ''Money'' the law is laid down as follows: ''In law the term (money) has a technical meaning according to which it is to be interpreted when used in statutes unless there is something in the context to show that a wider meaning is intended,'' citing numerous cases, and further in note 3, under the same heading it holds as follows: ''When used in judicial proceedings it is always to be taken in its technical sense.'' Citing: *Williams* v. *State*, 12 Sm. & M. (Miss.) 58; *Waterman* v. *Waterman*, 34 Mich. 490.)

What are Liberty bonds but the promise of the United States to pay at a future date money and in effect they are but promissory notes of the United States. At the time they were deposited they were not worth their face value; they were not payable in full on demand; they had not been made legal tender by Congress, and were nothing more nor less than the mere promise of the United States to pay to the holder a number of years hence the amount set forth in said bond with interest. Money does not include bonds. (*Hancock* v. *Lyons*, 67 N. H. 216, 29 Atl. 638; government stock, *Commonwealth* v. *Howe*, 132 Mass. 250; *Dabney* v. *Cottrell*, 9 Gratt. (Va.) 572; *Montgomery County* v. *Cochran*, 121 Fed. 17, 57 C. C. A. 261, nor securities, *Dillard* v. *Dillard*, 97 Va. 434, 34 S. E. 60; see, also, *State* v. *Mispagel*, 207 Mo. 557, 106 S. W. 513; *Block* v. *State*, 44 Tex. 620; *Mann* v. *Mann's Executors*, 1 Johns. Ch. 231, N. Y.)

The agreed statement of facts shows that the plaintiff owned the Liberty bonds and not Craig, the defendant in the criminal

action. The cases hold that as the defendant clerk in this case was without authority to receive the Liberty bonds as bail in lieu of a written undertaking; he received them merely in his private capacity and is, therefore, answerable to the owner only in that capacity. (*Commonwealth* v. *Sitler,* 261 Pa. 261, 104 Atl. 604); and where a clerk or other officer of the court holds funds in his private capacity, and not by statutory provision, the fund is attachable in his hands. (*Weaver, Admr.,* v. *Davis,* 47 Ill. 235; *Morse* v. *Holt,* 22 Me. 180.) "The right of the depositor to recover his deposit, unlawfully received by a clerk or magistrate, is clearly established." (*Hassen* v. *Earll,* 61 Mont. 389, 202 Pac. 581; *Brasfield* v. *Milan,* 127 Tenn. 561, 44 L. R. A. (n. s.) 1150, 155 S. W. 926; *Applegate* v. *Young,* 62 Kan. 100, 61 Pac. 402; *McNamara* v. *Wallace,* 97 App. Div. 76, 89 N. Y. Supp. 591; *State* v. *White,* 40 Wash. 560, 2 L. R. A. (n. s.) 563, 82 Pac. 907; *Doane* v. *Dalrymple,* 79 N. J. L. 200, 74 Atl. 964; *State* v. *Owens,* 112 Iowa, 403, 84 N. W. 529; *People* v. *Laidlaw,* 102 N. Y. 588, 7 N. E. 910; *Whiteaker* v. *State,* 31 Okl. 65, 119 Pac. 1003.) In fact there appears to be no case in the books where the right to recover such a deposit has been questioned.

That money deposited with a police justice in lieu of bail, when he accepts without authority, can be recovered back, was held in *McNamara* v. *Wallace,* 97 App. Div. 76, 89 N. Y. Supp. 591; *Applegate* v. *Young,* 62 Kan. 100, 61 Pac. 402; *Snyder* v. *Gross,* 69 Neb. 340, 5 Ann. Cas. 152, 95 N. W. 636; *Brasfield* v. *Milan,* 127 Tenn. 561, 44 L. R. A. (n. s.) 1150, 155 S. W. 926; note, 44 L. R. A. (n. s.) 1150.

In *State* v. *Lagoni,* 30 Mont. 472, 76 Pac. 1044, this court held: "Though a defendant is released on bail, if the bail was not lawfully required, it is *nudum pactum.*" In the *Lagoni Case,* recovery on the so-called bond was denied. So in the case at bar, the alleged deposit in lieu of bail, could not be legally forfeited where it had not been lawfully required. It was not, therefore, subject to lawful forfeiture but remained the property of the plaintiff who had furnished the Liberty bonds, namely, Aurelia Kirschbaum.

Appellant's counsel seemingly place chief reliance upon *Mundell* v. *Wells*, 181 Cal. 398, 7 L. R. A. 383, 184 Pac. 666, but that case is readily distinguishable from the action at bar in this: There the defendant Cradelbaugh was tried and convicted, was released and admitted to bail pending sentence and the money in the hands of Wells as clerk of court was by order of court accepted as security for his due appearance for sentence; and the direct question presented was whether from the money of a third person who had put it up as cash bail and such money was in the clerk's custody, the clerk could satisfy that part of the judgment imposing the fine.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The pleadings and agreed statement of facts tell us that Herbert Craig, being in the custody of the sheriff of Meagher county charged with the commission of a felony, was arraigned upon the information on September 7, 1923, pleaded not guilty, and his bail was fixed at $2,000. With him in court were his attorney, Mr. Angell, and the plaintiff, Aurelia Kirschbaum. Being desirous of obtaining his liberty and unable at that time to give a written undertaking, Craig requested the court to permit him to deposit with the clerk of the court two Liberty bonds of the third issue, of the par value of $1,000 each, in lieu of putting in bail by written undertaking. He promised and agreed that if the court would permit him to do so he would within a reasonable time and as soon as John Kirschbaum should come to White Sulphur Springs to sign a written undertaking, cause to be substituted in place of the Liberty bonds a proper and sufficient undertaking as bail. The plaintiff understood the situation fully; in fact it was she who procured and gave to Craig the bonds that he might put them up in lieu of a written undertaking; she advised and counseled him to make the deposit of the bonds and aided and assisted him in so doing; he would not have done so except for her conduct and assistance. Craig was then an employee of plaintiff and her husband. The court, Hon. William L. Ford presiding, upon

the faith, representations, promise and agreement made by Craig, granted the request and the bonds were thereupon deposited with F. H. Mayn, the clerk of the court. It was understood by the court, by Craig, and the plaintiff, at all times, that the deposit of the bonds "was a substantial equivalent or substitute for actual money or cash to the amount of $2,000 so fixed as bail" and that the Liberty bonds at the time of the deposit were "substantially the equivalent of $2,000 money or cash." Upon the deposition of the bonds with the clerk, Craig being then in open court and in custody, he "was forthwith by direction or order of the court, duly given, granted his liberty and discharged from custody, although no certificate to that effect was made."

No written undertaking was ever substituted for the bonds, but on or about the twenty-seventh day of November, 1923, Mr. Angell, counsel for Craig, in Craig's behalf and at the request of the plaintiff, offered to the clerk of the court at White Sulphur Springs, and upon his refusal to accept the same, to Judge Ford at Harlowton (district court being in session in Wheatland county with Judge Ford presiding), a written undertaking in the form required by statute, the sureties whereon could qualify. When the written undertaking was offered Craig was not in court; indeed, he had left the court's jurisdiction; his whereabouts were then and ever since have been unknown to his counsel. Never since he deposited the bonds has Craig surrendered, or offered to surrender, himself into custody. Judge Ford refused to accept the written undertaking. Craig did not appear for trial upon March 16, 1924, that being the date when his case was set for trial, and he has never appeared since.

On February 16, 1924, Aurelia Kirschbaum, the plaintiff, began an action in claim and delivery against F. H. Mayn, as clerk of the court, and F. H. Mayn individually, to recover the possession of the bonds or the sum of $2,000, the value thereof, in case delivery could not be had. On March 10, 1924, defendant answered. He admitted his possession of the bonds, and alleged that he retained the same as clerk and not otherwise.

He pleaded the facts under which the bonds were delivered to him by the prisoner and set forth plaintiff's participation in the transaction. Defendant also pleaded estoppel as against the plaintiff.

When Craig did not appear for trial upon March 18, 1924, the court made an order setting forth that he had failed to appear for trial upon the day set which constituted failure and breach of the obligation and recognizance entered into by him by his deposit of the bonds with the clerk; whereupon his default was ordered entered in the minutes and the deposit made by him declared forfeited to the value of $2,000, and it was ordered that judgment be rendered against him in favor of the state of Montana for that sum of money; it was directed that execution issue against the bonds for that sum, accruing interest, and all proper costs of sale under the writ. The order is still in full effect. Subsequent to the entry of the order a judgment was rendered in favor of the state against Herbert Craig as defendant for the sum of $2,000, with interest, and it was directed that the same be satisfied out of the bonds.

Plaintiff replied to defendant's answer on April 29, 1924. On June 27, 1924, plaintiff and defendant agreed in writing upon the facts. Trial followed, Judge Lynch sitting for Judge Ford, with the result that the court ordered judgment entered in favor of F. H. Mayn as clerk of the court, but rendered judgment to the effect that the plaintiff recover from F. H. Mayn the possession of the bonds, or the value thereof in the sum of $2,000, in case delivery of the bonds could not be had, together with costs. From this judgment the defendant F. H. Mayn has appealed. The plaintiff has moved to dismiss the appeal. We deem the motion without merit. It is overruled.

1. Admission to bail is the order of a competent court or **[1, 2]** magistrate that the defendant be discharged from actual custody upon bail. (Sec. 12133, Rev. Codes 1921.) The taking of bail consists in the acceptance, by a competent court or magistrate, or legally authorized officer, of the undertaking of sufficient bail for the appearance of the defendant, according to the terms of the undertaking, or that the bail will pay to the state a specified sum. (Sec. 12134, Rev. Codes 1921.)

By the terms of section 12154, it is provided: "The defendant, at any time after an order admitting him to bail, instead of giving bail, may deposit with the clerk of the court in which he is held to answer the sum mentioned in the order, and, upon delivering to the officer in whose custody he is a certificate of the deposit, he must be discharged from custody."

The "sum mentioned in the order" means a sum of money. (Sec. 9831, Rev. Codes 1921.) It is conceded, as it must be, that the order fixing bail was lawful, but it is vigorously contended by counsel for plaintiff that the deposit of the Liberty bonds was not equivalent to a deposit of $2,000 in money. Apparently it is upon this theory that plaintiff's case and the judgment in her favor rest: the court evidently concluded that the receipt of the Liberty bonds was not authorized by statute, and therefore the order of the court directing their receipt by the clerk was unlawful, and their retention by the clerk was unlawful; upon this premise the clerk did not receive them in his official capacity, because that would be unlawful, but in his private capacity and therefore he became answerable to the owner only in his private capacity. The judgment of the court was wrong upon two grounds: first, it is specifically stipulated by the parties, as we have seen, that the deposit of the Liberty bonds was the substantial equivalent of actual money or cash to the amount of $2,000, and it does not now lie in the mouth of the plaintiff to deny it. Secondly, upon the admitted facts, the plaintiff is estopped to deny that the court did not have authority to receive the bonds as bail; if it were admitted that the court did wrong in accepting them the plaintiff will not be heard to assert the fact to her advantage, for she is *in pari delicto.* She aided and abetted Craig in securing his release from custody by means of these very bonds which she furnished him for that purpose. Had it not been for her the court would not have been persuaded into an action which she now attempts to assert is wrong. She will not be permitted to take advantage of her own wrong. (Sec. 8746,

Rev. Codes 1921.) The law will leave the plaintiff where she has voluntarily placed herself.

The following authorities are in accord, although we do not commit ourselves to the full length to which some of them go: *Bryant* v. *City of Bisbee* (Ariz.), 237 Pac. 380; *Moss* v. *Summit County,* 60 Utah, 252, 26 A. L. R. 206, 208 Pac. 507; *Sauskelonis* v. *New Brittain,* 89 Conn. 298, 94 Atl. 368; *Cooper* v. *Rivers,* 95 Miss. 423, 48 South. 1024; *Smart* v. *Cason,* 50 Ill. 195; *State* v. *Reiss,* 12 La. Ann. 166.

2. Nor is it material that the sheriff did not receive "a [3] certificate of deposit," in accordance with section 12154, *supra.* This would be sacrificing substance to form. The fact is that the prisoner was in court in the custody of the sheriff. When the prisoner pursuant to his own request delivered the bonds to the clerk upon the court's direction, he was "forthwith by direction or order of the court, duly given, granted his liberty and discharged from custody," the sheriff was directed to release the prisoner and did so. The prisoner did not need the certificate, for, so far as he was concerned, its object was attained, he was at liberty. The fact that the sheriff did not demand a certificate for his files (which would disclose his authority for releasing the prisoner) is not that which concerns this plaintiff.

3. But it is urged by counsel for plaintiff that the agreement was that the bonds were to remain as bail only until a written undertaking should be furnished, which should be within a reasonable time, "and as soon as John Kirschbaum came to town to sign up the bond." It is said this agreement was kept faithfully by Craig in that his counsel presented to the clerk and to the judge a bond in the form required by the statute, the sureties whereon could qualify. Why Judge Ford did not approve the undertaking we do not know. Possibly it was because Craig was not then within the jurisdiction of the court. Whatever the reason was, the fact remains that he did not accept the undertaking, and the bonds continued to stand as bail. When Craig was called for trial,

came not but made default, the bonds became forfeited, as the court adjudged.

Also it is asserted by plaintiff's counsel that when this action was begun the court had not forfeited the bail and had not rendered judgment against Craig, and the case should be decided upon the facts as they existed when the action was begun. The action, as will be remembered, was commenced on February 16, 1924, while the order of forfeiture and judgment were not made until March 18, 1924. The agreed statement, however, has furnished to the court the facts necessary to a decision upon the merits. Incidentally if it were necessary to have pleaded those facts, which it was not, the situation considered, they might have been supplied by supplemental pleadings.

4. It is agreed by the parties that the defendant received [4] the bonds as clerk of the court and not otherwise. He did so at the court's direction, and in view of the conceded facts it cannot be said that the court's action was unlawful. The court erred in rendering judgment against the defendant in his individual capacity. The judgment in favor of the defendant in his official capacity is not attacked; it stands unquestioned.

The judgment is reversed with directions to the district court of Meagher county to enter judgment in favor of the defendant F. H. Mayn.

*Reversed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK AND MATTHEWS concur.